**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

----------------------------------------------×

La'Tawn Prince, individually and on behalf of
all others similarly situated,

      *Plaintiff,*

   v.

Accenture LLP and
Mortgage Cadence, LLC,

      *Defendants.*

----------------------------------------------×

**COMPLAINT**

**1:24-cv-1544**

**JURY REQUESTED**

    Plaintiff La'Tawn Prince ("Plaintiff"), by his counsel, Harman Green PC, alleges for his Complaint against Defendants Accenture LLP and Mortgage Cadence, LLC ("Defendants") as follows. This Complaint is alleged individually and on behalf of all other similarly-situated employees as a Class Action, pursuant to the Federal Rules of Civil Procedure, Rule 23, or, in the alternative, a Collective Action pursuant to the Fair Labor Standards Act ("FLSA"), 29 USC 201 et seq.:

## PRELIMINARY STATEMENT

1. This case is about the failure to pay overtime for all "on call" hours and any other related hours beyond forty (40) working hours per week.

2. Plaintiff was a Client Support Senior Analyst, and every weekend he was tasked with being "on call." To be on call deprived Plaintiff of his ability to manage his day or otherwise have any 'free time.'

3. Stated differently, because of Defendant's designation that Plaintiff be on call, he was working. Plaintiff was never compensated for his on call time.

## JURISDICTION

4. Pursuant to 28 U.S.C. §1331 this Court may properly hear Plaintiff's claims as they arise under a federal statute.

1

5. Venue is proper as Plaintiff originally began his employment in Colorado and, despite working remotely from Texas, is 'in the office' through Colorado.

## PARTIES

6. Plaintiff was a resident of Colorado and, now, is a resident of Texas, working remotely for Defendants.

7. Upon information and belief, properly designated Class and Collective Members are residents of Colorado, but the class of putative plaintiffs may extend beyond only Colorado residents.

8. Defendant Accenture LLP has a registered corporate headquarters at 500 W Madison St Chicago, Illinois 60661 and an international headquarters located at 1 Grand Canal Square Grand Canal Harbour Dublin, Ireland D02 P820.

9. Defendant Mortgage Cadence LLC is a wholly owned subsidiary of Defendant Accenture LLP with a registered address at 1999 Broadway Ste 1200, Denver, Colorado 80202.

## JURY DEMAND

10. Plaintiff respectfully requests a trial by jury.

## STATEMENT OF FACTS

11. Plaintiff and Class Members are individuals who have worked for Defendants as a Client Support Analyst or any other similarly-titled, non-exempt positions during the statutory period.

12. Amongst other things, Plaintiffs all shared similar job titles, training, job descriptions and job tasks.

13. Despite having tasks that do <u>not</u> fall within a salary exempt category, Plaintiff and Class Members were <u>improperly and illegally</u> classified as salary exempt.

14. Defendants willfully and intentionally designated Plaintiff and Class Members as salaried employees even knowing they should be paid hourly, not by salary.

2

15. Defendants only did this to conceal its wage theft and its failure to pay overtime.

16. Plaintiff was a Client Support Senior Analyst from 2012 through 2022. From 2016 through 2018, Plaintiff did not work for Defendants. In 2018, Plaintiff began working for Defendants fully remotely.

17. At around this time, Defendant Accenture fully acquired and controlled Mortgage Cadence, LLP, making them one and the same, and inseparable, as joint employers.

18. In fact, Defendant Mortgage Cadence, LLP is often referred to as "Mortgage Cadence, an Accenture Company."

19. Beginning in 2012, Plaintiff took on "on call" responsibilities.

20. Plaintiff worked on call twice a week from 2012 through October 2022 and on weekends every two weeks.

21. An on-call shift was a full twelve hours.

22. Twice per week, on weekdays, Plaintiff worked twelve hours on call shifts.

23. Every other weekend, on both Saturday and Sunday, Plaintiff worked twelve hour on call shifts.

24. Every two weeks, Plaintiff worked a total of seventy-two hours on call, forty-eight during the work week and twenty-four over the weekend.

25. Plaintiff, for each week of his employment, has thirty-six hours of unpaid overtime.

26. Plaintiff was never compensated for his on call hours.

27. Plaintiff was required to have an app, PagerDuty, running on his phone during on call hours and was required to sit in front of his computer during on call hours.

28. Specifically, Plaintiff and Class Members used the Salesforce platform for ticket management.

29. Tickets were opened by mortgage holders and software users.

30. Essentially, if a user had an issue with their mortgage application or their profile showed a discrepancy, Plaintiff would receive a 'ticket' to track and resolve the issue in the user's profile.

31. Plaintiff was actively engaged and working during his on call hours.

32. Plaintiff had four or more tickets every on call session. Tickets would often last hours and would take hours to resolve.

33. Plaintiff would begin his workday around 8:00am Central and finish his workday around 4:00pm Central, and on his on call days, would begin his on call shift at 6:00pm Central.

34. That on call shift would last until 6:00am Central the next day.

35. During this on call time, Plaintiff was unable to sleep, unable to leave his home or go to the grocery store, unable to engage family or friends, and, essentially, unable to be anywhere but in front of his computer.

36. In a typical work week, Plaintiff would, for example, work an entire shift one day, then work on call through the night, then work the next day's shift, essentially as a continuous thirty-six hour period. This happened twice per week.

37. As well, every other weekend was completely subsumed by on call time.

38. During his on call period, Plaintiff had to sit and wait with tickets to act as a liaison between departments, directing employees and customers to the department that could actually fix whatever issue they were experiencing.

39. Plaintiff had no independent discretion over any matters of authority during his employment.

40. Plaintiff did not meet and of the exempt criteria as defined by 29 CFR 541 et seq.

41. Fact Sheet #64: Call Centers under the Fair Labor Standards Act ("FLSA"), published by the Department of Labor, expressly recognizes that call center employees are

4

sometimes misclassified as salaried employees.

42. Plaintiff and the Class Members are such employees.

## CLASS ALLEGATIONS

43. Plaintiff proposes the following as a Class: all Client Support Analysts who currently work, or have worked, for the Defendants and who have not been compensated, as overtime pay as understood under the FLSA, for on call working hours.

44. Class Members were and are not able to engage in personal pursuits while on call.

45. Class Members were improperly listed as 'exempt employees' and paid a salary.

46. Class Members are not exempt because they are liaisons of information. They hold no independent discretion making abilities and are not computer employees within the meaning of 29 U.S.C. § 213(a)(17).

47. Class Members do not write or manipulate the underlying proprietary code.

48. Class Members do not need specialized degrees to perform their work or primary job responsibilities.

49. Class Members manipulate data input by customers and users, Class Members do not manipulate the code related to the Mortgage Cadence software.

50. If Mortgage Cadence software code needed manipulating, employees other than Class Members handled that manipulation and/or modification.

51. While on call, Class Members must be dedicated to their computer.

52. Tickets can last hours to close.

53. Class Members often work through the night on tickets rather than sleeping while on call.

54. All on call hours were active and Class Members could not engage individual pursuits.

5

55. This action is properly maintainable as a class action because:

a. The class is so numerous that joinder of all members is impracticable;

b. There are questions of law or fact that are common to the class;

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class; and,

d. The Representative Plaintiff will fairly and adequately protect the interests of the class

### Numerosity

56. On information and belief, the total number of putative class members represents at least one hundred (100) individuals.

57. The precise number of Class members should be readily available from Defendants' personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b). Given the composition and size of the Class, its members may be informed of the pendency of this action directly via U.S. mail and e-mail.

### Commonality

58. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class including, but not limited to, the following:

a. Whether Plaintiff and the Class Members were all paid by the hour;

b. Whether Plaintiff and the Class Members, by definition, all worked in excess of 40 hours per week.

c. Whether Defendants encouraged, suffered and/or permitted Plaintiff and Class Members to perform non-billable work without pay;

d. Whether Defendants maintained common timekeeping and payroll systems and policies

6

with respect to Plaintiff and the Class members, regardless of their job title or location;

e. Whether Defendants failed to pay Plaintiff and the Class Members an overtime premium of 1 and 1/2 times their regular hourly rate for all time worked in excess of 40 hours per week; and

f. Whether Defendants failed to pay Plaintiff and Class Members all compensation rightfully owed.

### Adequacy

59.     The Representative Plaintiff will fairly and adequately protect the interests of the class. He has retained experienced counsel who are competent in the prosecution of complex litigation and who have experience acting as class counsel specifically in wage and hour litigation.

### Typicality

60.     The claims asserted by the Representative Plaintiff are typical of the Class Members he seeks to represent. The Representative Plaintiff has the same interests and suffers from the same injuries as the Class members.

61.     Upon information and belief, there are no other Class Members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the difficulties involved in bringing individual litigation against one's employer. However, if any such Class member should become known, he or she can opt out of this action pursuant to Rule 23.

### Superiority

62.     The numerous common questions of law and fact set forth in the commonality discussion above predominate over individual questions because Defendants' alleged underlying activities and impact of their policies and practices affected Class members in the same manner: they were subjected to a policy of suffering overtime work without overtime pay.

## CAUSES OF ACTION
## FIRST CLAIM

### Violations of the Fair Labor Standards Act

63. Plaintiff and Class Members reiterate and reincorporate all the preceding allegations and reassert them here.

64. Defendants operate an "enterprise" as defined by Section 3(r)(1) of the FLSA, 29 U.S.C. § 203(r)(1), and are engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

65. Plaintiff and the Class Members are similarly-situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

66. FLSA Section 207(a)(1) states that an employee must be paid an overtime rate, equal to at least 1 and 1/2 times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

67. Plaintiff and Class Members were not paid for their on call time.

68. All on call time was worked in excess of the Class Members' forty hour work week.

69. Defendants, in a scheme to defraud the Class Members and force them to work overtime without compensation, listed Class Members as salary exempt when they are not and when Defendants knew Class Members should not be listed as such. As such, Defendants' acts were willful and malicious.

70. Plaintiff and the Class members have been harmed as a direct and proximate result of Defendants' unlawful conduct because they have been deprived of overtime wages owed for time worked in excess of 40 hours per week from which Defendants derived a direct and substantial benefit.

71. Defendants are liable to the Plaintiff and the Class Members for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs and expenses.

72. Plaintiff and the Class Members are also entitled to injunctive relief to prevent Defendants from continuing their violation of the FLSA and other appropriate class-wide injunctive relief.

### REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages for wages, unpaid overtime compensation and an additional, equal amount, as liquidated damages, emotional distress, compensatory damages yet to be determined, attorneys' fees, interest, costs and disbursements;

B. Pre- and post-judgment interest at the highest applicable rates;

C. An order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) to the FLSA Class to permit them to join this action by filing a written notice of consent; and

D. For such other and further relief as the Court deems just and proper.

Dated:
May 31, 2024

                                      **HARMAN GREEN PC**

By: *[signature]*

                                      Walker G. Harman, Jr.
                                      140 Broadway, Fl 46

New York, NY 10005
824 Exposition Ave., Suite 8
Dallas, Texas 75226
(646) 248-2288
wharman@theharmanfirm.com
erichardson@theharmanfirm.com
*Attorneys for Plaintiff*

10